#### FOR THE

## COUNTY OF ORLEANS.

### MARCH TERM, 1843.

---

### PRESENT.

Hon. STEPHEN ROYCE, ⎫
Hon. MILO L. BENNETT, ⎬ ASSISTANT JUDGES.
Hon. WILLIAM HEBARD, ⎭

---

### BROWN, MAY AND OTHERS *v.* JOSIAH WRIGHT.

A recital, in the deed of a collector of a land tax, that "he has in all things pursued the directions of the statute," is not *prima facie* evidence of such fact; but the person claiming under such deed must show that every substantial requisite of the law was complied with.

When no possession has been taken under such deed, no presumption in its favor can be claimed from its antiquity,—but rather the contrary.

If the warrant to such collector mis-recited the time at which the statute was enacted, by virtue of which the tax was levied, the warrant is void, and the collector's deed of land sold under it will convey no title.

EJECTMENT for a lot of land in Newport. Plea the general issue, and trial by jury.

13

Brown et al. *v.* Wright.

The case came to this court on exceptions taken by the defendant to the decisions of the court below. The point on which the case was decided, and the facts connected therewith, appear in the opinion of the court, which, after argument by *Colby* and *Smalley & Adams* for defendant, and by ———— for plaintiffs, was delivered by

BENNETT, J. This was an action of ejectment, brought to recover " a division lot drawn to the right of one Fisk, situate in Newport." The plaintiffs' title depends upon the legal effect of a vendue deed from S. Pearl to S. Knowlton, bearing date the 7th of March, 1795. The tax, for the non-payment of which it is claimed the land now in dispute was sold, is what is called the half-penny tax, granted in 1791, for the purpose of paying to the state of New-York the sum of thirty thousand dollars, which this state had assumed to pay. Though this case has been argued at great length, and many objections taken to the validity of the collector's proceedings, yet we shall have occasion to travel over but a small portion of the ground. The principle governing our courts in regard to vendue titles has been, to inquire whether all those acts have been done, which the statute has required. If so, then the sales have been held valid, but otherwise not.

The collector has, in this case, certified, or recited, in his deed, that "he has, in all things, pursued the directions of the statute." It has frequently been claimed that such a recital makes out a *prima facie* case in favor of the tax title, and that the *onus probandi* of impeaching the title is thus cast upon the other party. Such a doctrine was promulgated in *Powell* v. *Brown*, 1 Tyler 236, and in *Parker* v. *Bixby et al.*, 2 Tyler 466. I conceive the general proposition is, that every party who sets up a title must show all those facts which are necessary to support it. If the validity of the title depends upon matter *in pais*, there is the same reason why the party should be bound to prove it, as there would be, that he should prove any matter of record upon which the title was to depend. The collector has no general authority; but his power is a special one, not coupled with an interest, and he can only sell lands in such particular cases as are provided for in the statute; and those cases must be shown to exist, or else his power cannot arise. I

know of no principle that will make the certificate of the collector evidence, against a stranger to the deed, of the existence of those facts from which his special powers are to arise. See *Jackson* v. *Shepherd*, 7 Cow. 88 ; *Williams* v. *Peyton's lessee*, 4 Wheat. 77 ; *Rockendorf* v. *Taylor*, 4 Pet. 359; *Hall* v. *Collins*, 4 Vt. 316, *per* BAYLIES, J. To divest a person of his property against his consent, under a special authority, great strictness is required. Every substantial requisite of the law must have been complied with, and the person, who claims under the tax title, must take upon himself the proof of the regularity of the proceedings. This has been the repeated doctrine of our courts. Nothing can be claimed by the plaintiffs from the antiquity of the collector's deed. There having never been a possession under the title, it is rather a presumption against it. See *Richardson* v. *Dorr*, 5 Vt. 17.

The plaintiffs claim that they have shown a compliance with all the requisitions of the statute granting this tax. We shall consider but a single objection. The statute granting the tax was passed the 3d day of November, 1791 ; and, by the 1st and 2d sections, the treasurer was directed to issue his warrants to the respective constables and sheriffs between the first day of March and first day of November, 1792, for its collection. The additional act, passed in 1792, relating to the collection of this tax, and intended to remove difficulties attending it, provided for the issuing of the warrants without limitation as to the time. See Statute, Tolman's Ed., p. 243. As the time specified under the act of 1791, for issuing the warrants, had expired before the statute of 1792 was passed, this must have been, in effect, an entire and independent provision, in that particular. The plaintiffs have given in evidence a record copy of the warrant, upon which they rely,—the original warrant having been recorded in the clerk's office of Chittenden county, under the provisions of the act of 1803. Passing over all questions that have been raised in regard to the delivery of the warrant to the sheriff, we will come directly to the warrant itself.

The warrant purports to have been issued by the treasurer on the 10th day of November, 1792, and recited the tax to have been levied by virtue of acts dated October, 1791, and November, 1792, and purports to empower the sheriff to collect said tax agreeably to

the said acts. The act granting the half-penny tax was passed the 3d day of November, 1791, and in 1792 no act was passed granting any such tax as is specified in the warrant. The acts of 1792 are simply in addition to the act of November 3, 1791, granting the tax, and only relate to its collection. In *Spear* v. *Ditty*, 9 Vt. 283, it is said by the judge, in delivering the opinion of the court, that sales for land taxes are proceedings *in invitum*, and, being a mode of transferring title by operation of law, without the agency of the owner, and in the nature of a forfeiture, that the proceedings are, as conditions precedent, to be strictly followed ; and the judge adds, "perhaps, literally." In *Culver* v. *Hayden*, 1 Vt. 359, we have an exceedingly strong case. There it was held, that the omission, in the collector's advertisement, of the place where the legislature held their session, when the tax was granted, was fatal to the tax title. This was upon the ground that the form of the advertisement had been prescribed by the legislature, and in which a blank had been left to be filled up with the place where the legislature held their session ; and hence the court held it imperative, even though, when the form was prescribed, the legislature were ambulatory, having no permanent place of session, but when the act was passed granting the tax, they had a permanent seat fixed by law.

The present case, however, is one vastly different. The warrant, by mis-reciting the time when the act granting the tax was dated, [passed] has nothing to stand upon. No such statute, as that recited, existed. The rule in pleading a statute is, that if the party recite a statute as made upon a certain day, which was not made upon that day, he has failed, because he has recited a particular statute, and there being no such one, his pleading is grounded upon that which does not exist. 6 Bacon's Abr. 396. Certainly, in the proceedings for the sale of lands for the non-payment of taxes, as much strictness and certainty should be required, as, by the principles of pleading, is required in pleading statutes. We all think that this objection is fatal to the title of the plaintiffs. Though we might think there were other objections equally fatal, yet it is of no importance to consider them.

The result is, the judgment of the county court is reversed, and the cause remanded for a new trial.