J-S10032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER COTTLE | : | |
| | : | |
| Appellant | : | No. 1425 EDA 2018 |

Appeal from the PCRA Order April 26, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0000962-2008

BEFORE:   GANTMAN, P.J.E., STABILE, J., and COLINS*, J.

MEMORANDUM BY GANTMAN, P.J.E.:          **FILED MARCH 22, 2019**

Appellant, Christopher Cottle, appeals from the order entered in the Philadelphia County Court of Common Pleas, which denied his first petition brought pursuant to the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

In its opinion, the PCRA court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no need to restate them.  Procedurally, we add initial PCRA counsel filed a motion to withdraw as counsel on April 26, 2018, when the court stated on record it denied Appellant PCRA relief.  That same day, the PCRA court permitted counsel to withdraw and appointed new PCRA counsel.  Appellant filed a timely notice of appeal on May 16, 2018.  The PCRA court ordered Appellant on May 21, 2018, to file a concise statement of errors complained of on

_____

*   Retired Senior Judge assigned to the Superior Court.

appeal per Pa.R.A.P. 1925(b); Appellant complied on July 5, 2018, following an extension.

Appellant raises two issues for our review:

WHETHER THE [PCRA] COURT ERRED IN DISMISSING APPELLANT'S PETITION UNDER THE [PCRA] WITHOUT AN EVIDENTIARY HEARING[?]

WHETHER THE [PCRA] COURT ERRED IN DISMISSING APPELLANT'S AMENDED PETITION UNDER THE [PCRA][?]

(Appellant's Brief at 4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101, 109 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa.Super. 2012). Further, a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings. *Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa.Super. 2012); Pa.R.Crim.P. 907.

- 2 -

The law presumes counsel has rendered effective assistance. *Commonwealth v. Williams*, 597 Pa. 109, 950 A.2d 294 (2008). Under the traditional analysis, to prevail on a claim of ineffective assistance of counsel, a petitioner bears the burden to prove his claims by a preponderance of the evidence. *Commonwealth v. Turetsky*, 925 A.2d 876 (Pa.Super. 2007), *appeal denied*, 596 Pa. 707, 940 A.2d 365 (2007). The petitioner must demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for the asserted action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Id. See also Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999). "A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 34, 84 A.3d 294, 312 (2014) (quoting *Commonwealth v. Ali*, 608 Pa. 71, 86-87, 10 A.3d 282, 291 (2010)). "Where it is clear that a petitioner has failed to meet any of the three, distinct prongs of the…test, the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met." *Commonwealth v. Steele*, 599 Pa. 341, 360, 961 A.2d 786, 797 (2008).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis

for the assertion of ineffectiveness is of arguable merit…." ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

***Pierce, supra*** at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [a defendant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [***Kimball, supra***]*,* we held that a "criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

***Commonwealth v. Chambers***, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Glenn B. Bronson, we conclude Appellant's issues merit no relief. The PCRA court opinion comprehensively discusses and properly disposes of the questions presented. (***See*** PCRA Court Opinion, filed August 6, 2018, at 6-9) (finding: trial counsel objected when Commonwealth attempted to introduce

- 4 -

Brandon's police statement before Commonwealth asked Brandon about incident, and court sustained objection; later, when Brandon testified he knew nothing about incident and did not recall making statement to police, Commonwealth introduced Brandon's statement to police as prior inconsistent statement; Commonwealth offered testimony from police officers to prove Brandon had made statement, reviewed statement, made no corrections to statement, and acknowledged statement accurately memorialized what he had told police; Rules of Evidence did not require Commonwealth to refresh Brandon's recollection with prior statement before introducing statement; further, Commonwealth's offer of statement during direct examination of Brandon, before evidence from detectives to prove Brandon had made statement, gave Brandon opportunity to explain or deny making statement; trial counsel was not ineffective for failing to raise second objection to admission of Brandon's prior statement to police; based on foregoing, PCRA evidentiary hearing would have served no purpose). The record supports the PCRA court's rationale. Accordingly, we affirm on the basis of the PCRA court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/22/19</u>

**FILED**

2018 AUG -6 PH 3: 29

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PPENNSYLVANIA

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF : CP-51-CR-0000962-2008
PENNSYLVANIA :
:
:
v. :
: CP-51-CR-0000962-2008 Comm. v. Cottle, Christopher
: Opinion
CHRISTOPHER COTTLE :
:
OPINION 8146139501

BRONSON, J. August 6, 2018

On March 8, 2012, following a jury trial before this Court, defendant Christopher Cottle

was convicted of one count of murder of the first degree (18 Pa.C.S. § 2502(a)), one count of

conspiracy to commit arson (18 Pa.C.S. §§ 903, 3301(a)(1)(i)), one count of conspiracy to

commit assault (18 Pa.C.S. §§ 903, 2702(a)(1)), and one count of recklessly endangering another

person (18 Pa.C.S. § 2705).[1] The Court immediately imposed the mandatory sentence of life in

prison for the murder charge (18 Pa.C.S. § 1102(a)(1)). No further penalty was imposed on the

remaining charges. Defendant was represented at trial, sentencing, and on direct appeal by Gary

S. Server, Esquire.

On July 3, 2013, the Superior Court affirmed defendant's judgment of sentence. The

Supreme Court denied *allocatur* on November 6, 2013. Defendant then filed a *pro se* petition

under the Post Conviction Relief Act ("PCRA") on May 14, 2014. Jennifer Bretschneider,

Esquire was appointed to represent defendant on January 19, 2016. On April 28, 2017, Ms.

Bretschneider filed an Amended PCRA Petition ("Amended Petition"). On November 22, 2017,

after reviewing the Amended Petition, the Commonwealth's Motion to Dismiss, defendant's

---

[1] Defendant was acquitted of arson (18 Pa.C.S. § 3301(a)(1)(i), conspiracy to commit murder (18 Pa.C.S. §§ 903, 2502(a)), and conspiracy to commit robbery (18 Pa.C.S. §§ 903, 3701(a)(1)(iii)).

Response to the Commonwealth's Motion to Dismiss Petitioner's Amended PCRA Petition, and the Commonwealth's Sur-reply to Defendant's Response to the Motion to Dismiss, this Court ruled that the claims set forth in defendant's Amended Petition were without merit. That day, pursuant to Pa.R.Crim.P. 907, the Court issued notice of its intent to dismiss the petition without a hearing ("907 Notice"). Defendant filed a *pro se* response to the 907 Notice on December 15, 2017. On April 26, 2018, the Court entered an order dismissing defendant's PCRA Petition. In addition, the Court granted Ms. Bretschneider's motion to withdraw, and appointed Benjamin Cooper, Esquire to represent defendant on appeal.

Defendant has now appealed the Court's dismissal of his PCRA Petition, alleging that trial counsel was ineffective for failing to object to the admissibility of a pretrial statement to police given by Commonwealth witness Brandon Cottle. Defendant also claims that the PCRA court erred by dismissing his claim without an evidentiary hearing. Appellant's Concise Statement of Errors Complained of on Appeal in Accordance with Pa.R.A.P. §1925(b) ("Statement of Errors") at ¶¶ 1-2.[2] For the reasons set forth below, defendant's claim is without merit and the PCRA Court's order dismissing his PCRA Petition should be affirmed.

## I. FACTUAL BACKGROUND

The factual background of this matter is set forth in the Court's Rule 1925(a) opinion filed in defendant's direct appeal as follows:

> At trial, the Commonwealth presented the testimony of Lasheena Cottle, Karen Childrey, Roslyn Spearman, Brandon Cottle, Ryan Gallagher, Dr. Sam Gulino, Philadelphia Police Officers Terrence Lewis and Andre Daniels, Philadelphia Police Detectives Crystal Williams, John McDermott, Thorsten Lucke, Joseph Barmberski, and Howard Peterman, Philadelphia Police Sergeant Stephen Crosby, and Philadelphia Fire Department Lieutenant Bordes Ramseur. Defendant presented the testimony of Cheryl Moses. Viewed in the light most favorable to

---

[2] The additional paragraphs in defendant's Statement of Errors contain argument in support of defendant's claims. Defendant's claims have been reordered for ease of disposition.

2

the Commonwealth as the verdict winner, their testimony established the following.

On or about January 11, 2007, Brandon Cottle, the brother of the defendant, heard the defendant talking to Rick Hughes about killing a neighbor, Joseph Briggman. N.T. 3/6/2012 at 172-173.[3] Two days after this conversation, on January 13, 2007, defendant told Brandon Cottle to "[c]ome on over with us and be the lookout." N.T. 3/6/2012 at 172; 3/7/2012 at 39. Brandon Cottle, defendant, and Rick Hughes entered the home of Mr. Briggman, located at 2421 North Patton Street. N.T. 3/6/2012 at 169-172. After the three men entered the home, defendant told Brandon Cottle to check upstairs to see if anyone other than Mr. Briggman was in the home. N.T. 3/6/2012 at 172. Brandon Cottle went upstairs, and when he came back down, defendant had Mr. Briggman in a chokehold. N.T. 3/6/2012 at 172. Brandon Cottle went down to check the basement, and when he returned to the main floor of the house, defendant was still holding Mr. Briggman as Rick Hughes stabbed him repeatedly. N.T. 3/6/2012 at 172. At one point, Mr. Briggman broke free from defendant's grasp and stabbed him in the leg. N.T. 3/6/2012 at 172-173; 3/7/2012 at 41-42.

At the same time, Lasheena Cottle was getting ready for work in the home that she shared with her two brothers, defendant and Brandon Cottle, at 2428 North Patton Street. N.T. 3/5/2012 at 229-231. Rick Hughes, the father of her child, had spent the night at the home. N.T. 3/5/2012 at 230. As she prepared for work in her upstairs bathroom, she heard an explosion. N.T. 3/5/2012 at 231. She looked across the street and saw that the home belonging to her neighbor, Mr. Briggman, was on fire. N.T. 3/5/2012 at 231. Although Rick Hughes had spent the night in her home, and she had heard one of her brothers in the house that morning, Lasheena Cottle was alone in the house at the time that the fire broke out across the street. N.T. 3/5/2012 at 232-233.

At the time of the explosion, Roslyn Spearman was buying drugs on the corner of Patton Street and York Street, approximately six to eight houses from Mr. Briggman's residence, when she heard an explosion and saw defendant and Brandon Cottle running out of Mr. Briggman's residence. N.T. 3/6/2012 at 81-86. One block away from Ms. Spearman, another woman, Karen Childrey, was using drugs with her cousin on some outdoor steps on the 2500 block of Patton Street. N.T. 3/6/2012 at 59-60. Ms. Childrey heard a loud "boom," but did not know the source of the explosion. N.T. 3/6/2012 at 61-62.

When the Philadelphia Fire Department arrived at the scene to investigate the explosion that had destroyed Mr. Briggman's house, they determined the cause of the fire and resulting explosion to be a person or persons lighting gasoline on fire within the house. N.T. 3/6/2012 at 39-42. While investigating the source of the fire, members of the Fire Department discovered the body of Mr. Briggman inside

---

[3] Rick Hughes's case was severed from defendant's due to the unavailability of his counsel. Brandon Cottle agreed to cooperate and pled guilty to one count of conspiracy to commit murder (18 Pa.C.S. §§ 903, 2502).

the house. N.T. 3/6/2012 at 18-19. Mr. Briggman was pronounced dead at the scene. N.T. 3/6/2012 at 113. Although the cause of his death was later determined to be multiple stab wounds, he was burned over 70 percent of his body from the fire. N.T. 3/6/2012 at 115, 122. Mr. Briggman had been stabbed five times in the head and neck, five times in the chest, once in the shoulder, and once in the back. N.T. 3/6/2012 at 115.

Police arrived shortly after the explosion and approached Ms. Childrey and her cousin, who told police they did not know where the explosion came from, and that all they heard was a loud noise. N.T. 3/6/2012 at 62-63. After the police left, defendant approached Ms. Childrey and told her "don't talk to the cop." N.T. 3/6/2012 at 64-65. Later in the day, defendant returned and told Ms. Childrey again not to talk to the police, this time threatening her with a gun. N.T. 3/6/2012 at 64-65.

On the night of January 13, 2007, Lasheena Cottle saw Rick Hughes for the first time since the fire that morning. N.T. 3/5/2012 at 233-234. He had burns and bruises on both his face and his hands. N.T. 3/5/2012 at 234. The next day, Lasheena Cottle noticed defendant limping and he told her he had been stabbed. N.T. 3/5/2012 at 235-236, 239.

On June 7, 2007, the Fugitive Unit of the Philadelphia Police Department arrested defendant and Brandon Cottle for the murder of Mr. Briggman. N.T. 3/6/2012 at 161; 3/7/2012 at 28. Brandon Cottle confessed to being the "lookout" for his brother and Rick Hughes as they killed defendant, and told the police other details of the crime. N.T. 3/6/2012 at 169-170; 3/7/2012 at 41-44. Defendant also gave a statement to police, in which he admitting selling crack cocaine to Mr. Briggman for years and that Mr. Briggman, in the past, had owed him money. N.T. 3/7/2012 at 91. He claimed that, on the day of the incident, he had gone over to Mr. Briggman's house to sell him drugs, and was there attacked by Mr. Briggman and some unknown man and was stabbed by Mr. Briggman in the leg. He claimed to have fled from the house after pushing Mr. Briggman onto a glass coffee table, but denied being present when anyone stabbed Mr. Briggman. N.T. 3/7/2012 at 85-92. Police searched defendant and found a healed stab wound on his leg. N.T. 3/7/2012 at 45-48.

Trial Court Opinion, filed October 4, 2012, at pp. 2-5.

## II. DISCUSSION

An appellate court's review of a PCRA court's grant or denial of relief "is limited to determining whether the court's findings are supported by the record and the court's order is otherwise free of legal error." *Commonwealth v. Yager*, 685 A.2d 1000, 1003 (Pa. Super. 1996)

4

(citing *Commonwealth v. Legg*, 669 A.2d 389, 391 (Pa. Super. 1995)). The reviewing court "will not disturb findings that are supported by the record." *Id.*

Here, defendant's only substantive claim pertains to the alleged ineffective assistance of trial counsel. Under Pennsylvania law, counsel is presumed effective and the burden to prove otherwise lies with the petitioner. *Commonwealth v. Basemore*, 744 A.2d 717, 728 (Pa. 2000), n.10 (citing *Commonwealth v. Copenhefer*, 719 A.2d 242, 250 (Pa. 1998)). To obtain collateral relief based on the ineffective assistance of counsel, a petitioner must show that counsel's representation fell below accepted standards of advocacy and that as a result thereof, the petitioner was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In Pennsylvania, the *Strickland* standard is interpreted as requiring proof that: (1) the claim underlying the ineffectiveness claim had arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice. *Commonwealth v. Miller*, 987 A.2d 638, 648 (Pa. 2009); *Commonwealth v. Pierce*, 527 A.2d 973, 974-75 (Pa. 1987). To satisfy the third prong of the test, the petitioner must prove that, but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v. Sneed*, 899 A.2d 1067, 1084 (Pa. 2006) (citing *Strickland*, 466 U.S. at 694). If the PCRA court determines that any one of the three prongs cannot be met, then the court need not hold an evidentiary hearing as such a hearing would serve no purpose. *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008), *app. denied*, 956 A.2d 433 (Pa. 2008).

5

*A. Failure to Object to the Introduction, Admission, and Reading of Brandon Cottle's Pre-trial Statement to Police*

Defendant first claims that trial counsel failed to "object to the introduction, admission and reading of Commonwealth witness Brandon Cottle's pretrial statement to police..." Statement of Errors at ¶ 2. This claim is without merit.

At trial, the Commonwealth presented the testimony of Brandon Cottle, defendant's younger brother.[4] Prior to defendant's trial, Brandon was interviewed by detectives and confessed to acting as a lookout while defendant and his coconspirator, Rick Hughes, stabbed the victim, Joseph Briggman, to death. N.T. 3/6/12 at 169-70. In his statement to the detectives, Brandon gave detailed information regarding the murder. In particular, he told the detectives that a few days prior to the murder, he had heard defendant and Hughes talking about killing Briggman. He also stated that on the day of the murder, defendant instructed him to enter Briggman's home with defendant and Hughes, and to check the home to see if anyone else was there. N.T. 3/6/12 at 172. According to the statement, once Brandon checked the basement of the home, he came upstairs to find defendant holding Briggman down, while Hughes was repeatedly stabbing him. *Id.* However, at trial, Brandon denied knowing anything about the incident and claimed not to remember giving the portions of his statement to detectives in which he inculpated defendant and Hughes. N.T. 3/6/12 at 162-81. As a result, the Commonwealth presented the signed police statement of Brandon Cottle, here at issue.

Rule 803.1(1) of the Pennsylvania Rules of Evidence sets forth an exception to the hearsay rule for certain prior inconsistent statements of witnesses who testify at trial and are subject to cross-examination. Included under this exception to the hearsay rule are statements that have been reduced to a writing that was signed and adopted by the witness. Pa.R.E.

---

[4] Because Brandon Cottle and his brother, defendant Christopher Cottle, both have the same surname, Brandon Cottle is referred to hereafter as "Brandon."

6

803.1(1)(B). Such statements are admissible as substantive evidence even when the witness repudiates the prior statement during his testimony at trial. As long as the Commonwealth proves that the statement was signed by the witness and adopted at some time prior to the trial, it is covered by this hearsay exception. *See Commonwealth v. Brown*, 52 A.3d 1139, 1169–71 (Pa. 2012). Such prior inconsistent statements alone may be sufficient to sustain a guilty verdict. *Id.*

Here, Brandon, at trial, claimed to know nothing about the incident, and to not recall giving his statement to detectives. Therefore, his statement to police containing detailed information about the killing was plainly inconsistent with his trial testimony. Moreover, the Commonwealth offered the testimony of Detective John McDermott, who took the statement along with Detective David Baker, to prove that Brandon made the statement. N.T. 3/7/12 at 27-44. In addition, Detective Chrystal Williams testified that she read back the entire statement to Brandon, and that he made no corrections, signed each page of the statement, and acknowledged that the statement accurately memorialized what he had told the detectives. N.T. 3/7/12 at 19-22, 25. Therefore, the statement was properly admitted as substantive evidence under Rule 803.1(1)(B).

Defendant argues that defense counsel failed to object to the prosecutor reading Brandon's statement to the jury without a proper foundation. In particular, he contends that the statement was read, without counsel objecting, before Brandon gave any testimony inconsistent with the statement, and before any writing was used to attempt to refresh his recollection. This argument is meritless.

It is true that the prosecutor attempted to introduce the statement before asking Brandon anything about the events at issue in the case. Because Brandon had yet to give testimony inconsistent with the statement, its introduction at that time would have been improper.

7

However, trial counsel *did* object to the introduction of the statement at that time, and the Court sustained the objection. N.T. 3/6/12 at 161-65. Thereafter, Brandon denied knowing what happened to the decedent, Joseph Briggman, during the month of the murder, even though Brandon had pleaded guilty to conspiring to kill Briggman. N.T. 3/6/12 at 165-67. He claimed that he was high when he pled guilty and when he gave the statement to detectives. *Id.* at 166-67. Once Brandon denied any knowledge of the killing, his detailed accounting of the events in his statement was inconsistent with his trial testimony and was properly admitted. *See Commonwealth v. Carmody*, 799 A.2d 143, 148-49 (Pa. Super. 2002) (where witness claimed she had blacked out from alcohol and could not recall anything that had happened, her prior statement to police was admissible).

It is also true that the prosecutor made no attempt to refresh Brandon's recollection with his prior statement. However, there is no requirement, in the Rules of Evidence or elsewhere, that such an attempt be made before offering a prior inconsistent statement.

Finally, it is true that the prosecutor read the statement during the direct examination of Brandon, prior to offering the evidence from the detectives to prove that the statement had been made and adopted by Brandon. However, extrinsic evidence of a prior inconsistent statement is generally not admissible, even just for impeachment purposes, unless the statement is first disclosed to the witness, and the witness is given an opportunity to explain or deny the making of the statement. Pa.R.E. 613(b).

Accordingly, Brandon's statement to police was properly admitted as substantive evidence under Rule 803.1(1)(B). Although the Commonwealth attempted to question Brandon about the statement before a proper foundation had been laid, defense counsel objected and a proper foundation was presented. Thereafter, any objection by counsel to the statement would

8

Commonwealth v. Christopher Cottle                        CP-51-CR-0000962-2008
Type of Order: 1925(a) Opinion


## PROOF OF SERVICE


I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P.114:


**Defense Counsel/Party:**

Benjamin Cooper, Esquire
1500 Walnut St
22nd Floor
Philadelphia, PA 19102

Type of Service:        ( ) Personal (X) First Class Mail () Other, please specify:


**District Attorney:**

Lawrence Goode, Esquire
Interim Supervisor, Appeals Unit
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107-3499

Type of Service        ( ) Personal () First Class Mail (X) Other, please specify: *Interoffice Mail*


**Additional Counsel/Party:**

Joseph D. Seletyn, Esquire
Prothonotary
Office of the Prothonotary – Superior Court
530 Walnut Street, Suite 315
Philadelphia, PA 19106

Type of Service:        ( ) Personal (X) First Class Mail ( ) Other, please specify:


**Dated:  August 6, 2018**

Kaitlin D. Shire
Law Clerk to Hon. Glenn B. Bronson